[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
INTRODUCTION
The defendants have moved for summary judgment on the ground, inter alia, of collateral estoppel. The prosecution of, and defense against, this motion are unusual in that the defendants did not submit with the motion any affidavits concerning the facts of this case, and the plaintiff submitted an affidavit in opposition to the motion which does not set out the details of the event complained of. However, the court takes judicial notice of the decision in the case on which the defendants rely for their claim of collateral estoppel, and that decision is cited herein in regard to facts determined in that case.
FACTS
On June 19, 1987, James F. Callan and Gregory Sargis, both Hartford police officers, ended their shifts at midnight and proceeded to a local bar to meet with the plaintiff and a man named Fred Rodriguez. See Pitchell v. Callan, 13 F.3d 545, 546
(2d. Cir. 1994) (hereinafter the "Circuit Court decision"). The men began drinking at the bar and, after the bar closed, retired to Callan's residence, where they continued drinking. Id.
At approximately 3 a.m., Callan took his revolver in hand. Id. After Sargis and Rodriguez verified that the gun was loaded, Callan pointed it at the plaintiff and shot him in the face, causing permanent injury. Id.
HISTORY OF LITIGATION
On February 7, 1989, Attorney John R. Williams, one of the defendants, filed a complaint in United States District Court for CT Page 5374 the District of Connecticut (the "federal case") on behalf of the plaintiff and against the City of Hartford ("the City"), Callan and Sargis alleging: "(1) a section 1983 (42 U.S.C. § 1983) violation by Callan and Sargis on the ground that both men, acting under color of law, deprived Pitchell of rights secured to him by the Fourth, Fifth and Fourteenth Amendments, the claim against Callan being based on the shooting, the claim against Sargis being based on his failure to attempt to prevent the shooting; (2) state-law negligence and willful misconduct on the part of both Callan and Sargis predicated on the same behavior; (3) a section 1983 violation by the City of Hartford on the ground that the municipality was consciously indifferent to the safety of its citizens in its screening, training and supervision of the officers; and (4) a state-law claim against the City on the ground it was liable for the torts of its two officers." Circuit Court decision, 546-47.
42 U.S.C. § 1983 (hereinafter "§ 1983") provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress."
On the City's motion for summary judgment, the District Court, Covello, J., held both that the acts of Callan and Sargis were not committed under color of law, so that the City had no vicarious liability under § 1983, and also that the plaintiff had not shown the City to have been deliberately indifferent in the selection and training of Callan and Sargis, so that the City had no direct liability to the plaintiff under § 1983. While dismissing the plaintiff's § 1983 claims against the City, the District Court retained, at that time, pendent jurisdiction of the plaintiff's state law negligence claims against the City.
Following the District Court's action on the City's motion for summary judgment, that court acted on the motions for summary judgment of Callan and Sargis. Relying on its holding on the same issue in its decision on the City's motion for summary judgment, the District Court, Covello, J., again held that Callan and Sargis had not acted under color of law, so that § 1983 CT Page 5375 liability did not attach to them. Because that holding disposed of all of the plaintiff's federal claims against all defendants, the District Court went on to dismiss the remaining pendent state claims as to all defendants.
After a de novo review, on January 3, 1994, the United States Circuit Court for the Second Circuit affirmed the District Court rulings.
By complaint dated May 31, 1994, new counsel for the plaintiff brought suit in the Connecticut Superior Court against Callan, Sargis and the City (the "first state case"). Unlike the complaint in the federal case, the complaint in the first state case set out expressly, inter alia, a claim against the City pursuant to § 7-465 of the General Statutes, which provides, in relevant part:
 Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay . . . for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.
In the first state case, the Superior Court (Allen, S.T.R.) granted the City's motion for summary judgment on the § 7-465
claim on the grounds of res judicata and statute of limitations. (Because the parties before Judge Allen were identical to those in the federal action, res judicata barred the § 7-465 claim, whether or not it was actually alleged in the federal action, since it could have been alleged in that case.)
The plaintiff thereafter commenced the present action against the defendants for legal malpractice alleged to arise out of the defendants' legal representation of the plaintiff in the federal case.[1] In a three count amended complaint filed on September 11, 1996, the plaintiff sets forth the following causes of action: negligence[2], breach of warranty[3] and breach of contract[4].
DISCUSSION
CT Page 5376
Collateral Estoppel
In Aetna Casualty Surety Co. v. Jones, 220 Conn. 285
(1991), the court enunciated the elements and rationale of collateral estoppel, as follows:
 Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. (Internal quotation marks and citations omitted.)
Id., 296.
In regard to who can invoke collateral estoppel, the Aetna court answered affirmatively the following question:
 May a litigant who was not a party to a prior action invoke a verdict arrived at after trial to estop collaterally one who was a party or in privity with a party to the prior action?
Id., 297.
From Aetna, it is clear that the defendants, even though they were not parties to federal case, can raise a claim of collateral estoppel in this case.
The defendants' collateral estoppel claim rests on the holdings in the Circuit Court decision that:
 In the instant case, neither Sargis nor Callan was acting under color of law. When Callan pointed his gun at Pitchell, he was not acting in accordance with a police regulation, as was the off-duty officer in Stengel, supra, nor was he invoking the authority of the police department as in the pretense of law cases. Callan was an off-duty cop, who while drunk in his own home, used his own personal weapon to shoot a guest. Although Callan violated the law, he did so as a private citizen, not as a state actor.
CT Page 5377
Circuit Court decision, 548.
The defendants argue that things which are done by a police officer who is "acting in the performance of his duties and within the scope of his employment" (§ 7-465) are necessarily done "under color of law," so that the Circuit Court holdings that neither Callan nor Sargis was acting "under color of law" constitute holdings that neither Callan nor Sargis was "acting in the performance of his duties and within the scope of his employment" when the plaintiff was shot.
The court agrees that the Circuit Court holdings that neither of the individual defendants was "acting under color of law," and that Callan was acting "as a private citizen, not as a state actor," are incompatible with holdings that either of them was "acting in the performance of his duties and within the scope of his employment" when the plaintiff was shot. Those Circuit Court holdings are the equivalent of a holding by that court that the shooting of the plaintiff was not an act performed within the scope of § 7-465.
The remaining element in the Aetna test for the imposition of collateral estoppel is that the issue "must have been fully and fairly litigated . . . actually decided and . . . necessary to the judgment." Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 296 (1991).
The motions for summary judgment and the supporting affidavits filed in the federal case clearly establish that the issue whether Callan and Sargis were acting under color of law when the plaintiff was shot was fully and fairly litigated. That issue was expressly decided in the District Court decisions and in the Circuit Court decision. Because the performance of acts committed under color of law was an essential element of the plaintiff's § 1983 claim, the decisions on that issue were necessary to the judgment in the federal case.
It is held that the issue whether the conduct of Callan and/or Sargis was within the scope of § 7-465 was effectively decided adversely to the plaintiff in the federal case, and that the plaintiff is thereby collaterally estopped from relitigating that issue in this case.
Summary Judgment
CT Page 5378
In order to prevail in this malpractice claim, the plaintiff must prove that the defendants would have been successful had they raised a § 7-465 claim in the federal case. Because this decision holds that the Circuit Court decision rejected that claim, it is also held that, as a matter of law, the plaintiff could not have prevailed in the federal case. Therefore, the defendants are entitled to judgment in their favor as a matter of law.
CONCLUSION
Summary judgment is granted in favor of the defendants.
Levine, J.